# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

### REPORT AND RECOMMENDATION ON
### MOTIONS FOR DEFAULT JUDGMENT AND
### MOTIONS TO SET ASIDE DEFAULT

---

JAMES P. STEPHENSON, IN HIS CAPACITY,
AS TRUSTEE FOR THE ESTATE OF MJK CLEARING, INC.
PLAINTIFF,
V.
DEUTSCHE BANK AG, ET AL.,
DEFENDANTS.

CIVIL NO. 02-4845 MJD/AJB

---

FERRIS, BAKER WATTS, INC.,
PLAINTIFF,
V.
DEUTSCHE BANK SECURITIES, ET. AL.,
DEFENDANTS.

CIVIL NO. 02-3682 MJD/AJB

---

E* TRADE SECURITIES LLC,
PLAINTIFF,
V.
DEUTSCHE BANK AG, ET AL.,
DEFENDANTS.

CIVIL NO. 02-3711 MJD/AJB

---

WEDBUSH MORGAN SECURITIES, INC.,
PLAINTIFF,
V.
DEUTSCHE BANK AG, ET AL.,
DEFENDANTS.

CIVIL NO. 03-5198 MJD/AJB

---

CIBC WORLD MARKETS, INC.,
PLAINTIFF,
V.
DEUTSCHE BANK SECURITIES, INC. ET. AL.,
DEFENDANTS.

CIVIL NO. 04-1469 MJD/AJB

---

This matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a

report and recommendation to the District Court.  *See* 28 U.S.C. § 636 (b)(1) and Local Rule

72.1.  At issue are Plaintiffs' pending motions for default judgments in each of the above-caption cases and Defendant Ramy El-Batrawi's ("El-Batrawi") motions to set aside defaults.

On December 7, 2006, this Court ordered the parties to submit proposed findings of fact and conclusions of law by December 22, 2006.  Defendants RBF International ("RBF"), Kenneth D'Angelo ("D'Angelo"), Ultimate Holdings, Ltd. ("Ultimate"), and Adnan Khashoggi (Khashoggi") do not oppose Plaintiffs' motions for default judgment.  However, Defendants GenesisIntermedia, Inc. ("Genesis") and El-Batrawi oppose Plaintiffs' motions for default judgment.  Based on the reasoning set forth below, this Court **recommends** that:

1.    El-Batrawi's Motion to Set Aside Default in the case captioned *James P. Stephenson, in his capacity as trustee for the estate of MJK Clearing, Inc. v. Deutsche Bank AG, et. al*, Case No. 02-4845 [Docket No. 610] **be DENIED.**

2.    El-Batrawi's motion to set aside default in the case captioned *Ferris, Baker Watts, Inc. v. Deutsche Bank Securities Limited, et. al*, Case No. 02-3682 [Docket No. 955] **be DENIED.**

3.    El-Batrawi's motion to set aside default in the case captioned *E\*TRADE Securities, LLC v. Deutsche Bank AG, et. al*, Case No. 02-3711 [Docket No. 856] **be DENIED.**

4.    El-Batrawi's motion to set aside default and default judgment in the case captioned *CIBC World Markets, Inc. v. Deutsche Bank Securities Limited, et. al*, Case No. 04-1469 [Docket No. 397] **be DENIED.**

5.    Plaintiff James P. Stephenson's Motion for Default Judgment in the case captioned *James P. Stephenson, in his capacity as trustee for the estate of MJK Clearing, Inc. v. Deutsche Bank AG, et. al*, Case No. 02-4845 [Docket No. 597, 604, 622] **be GRANTED.**  The Court finds that entry of default is appropriate against Genesis.

The Court recommends default judgment against Defendants RBF, D'Angelo, Genesis, El-Batrawi, Ultimate, and Khashoggi as follows:

    a.   On Counts I, II, IV, VII, VIII, IX, X, XI, XII, XIII, and XIV of the Third Amended Corrected Complaint, Defendants RBF and D'Angelo should be held jointly and severally liable for a money judgment in the amount of $67.5 million, plus post-judgment interest.

    b.   On Counts I, IV, V, VII, and VIII of the Third Amended Corrected Complaint, Defendants Genesis, El-Batrawi, Ultimate, and Khashoggi should be held jointly and severally liable for a money judgment in the amount of $67.5 million, plus post-judgment interest.

6.     Plaintiff Ferris, Baker Watts, Inc.'s ("FBW") Motion for Default Judgment in the case captioned *Ferris, Baker Watts, Inc. v. Deutsche Bank Securities, Limited, et. al*, Case No. 02-3682 [Docket No. 967] **be GRANTED IN PART and DENIED IN PART as follows:**

    a.   The Court recommends that FBW's motion for default judgment **as to liability** be **granted** against defendants RBF, El-Batrawi, Ultimate, and Khashoggi on Counts I, IV, XVII, XVIII, XIX and XXI of the First Amended Complaint.

    b.   The Court recommends that FBW's motion for default judgment **as to damages** be **denied** without prejudice.  Defendants' request for an **evidentiary hearing** is **denied.**  FBW is directed to provide the Court with a more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.  To the extent that FBW is constrained from disclosing such details by virtue of a confidentiality agreement, FBW is directed to move the Court for relief from any such obligation and provide notice of such motion to the appropriate parties.

7.     Plaintiff E*TRADE's Motion for Default Judgment in the case captioned *E*TRADE Securities, LLC v. Deutsche Bank AG, et. al*, Case No. 02-3711 [Docket No. 869, 875] **be GRANTED IN PART and DENIED IN PART as follows:**

    a.   The Court recommends that E*TRADE's motion for default judgment **as to liability** [Docket No. 875] be **granted** against defendants Khashoggi, Ultimate, RBF, and El-Batrawi.

b. The Court finds that default judgment as to liability is appropriate against Khashoggi, Ultimate, and RBF on the claims asserted against them in E*TRADE's Third Amended Complaint. These claims are: for violations of § 10(b) of the Securities Exchange Act of 1934; for violations of § 9 of the Securities Exchange Act of 1934; for violations of the Minnesota Securities Act, Minn. Stat. §§ 80A.01 and 80A.03; for common law fraud; and for conspiracy to defraud.

c. The Court also finds that default judgment as to liability is appropriate against El-Batrawi on the claims asserted against him in E*TRADE's Third Amended Complaint. These claims are: for violations of § 10(b) of the Securities Exchange Act of 1934; for violations of § 9 of the Securities Exchange Act of 1934; for violations of the Minnesota Securities Act, Minn. Stat. §§ 80A.01 and 80A.03; for common law fraud; for conspiracy to defraud; and for violations of § 11 of the Securities Act of 1933.

d. The Court recommends that E*TRADE's motion for default judgment as to **damages** be **denied** without prejudice.  [Docket No. 869, 875].  Defendants' request for an **evidentiary hearing** is **denied**.  E*TRADE is directed to provide the Court with a more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.  To the extent that E*TRADE is constrained from disclosing such details by virtue of a confidentiality agreement, E*TRADE is directed to move the Court for relief from any such obligation and provide notice of such motion to the appropriate parties.

8. Plaintiff Wedbush Morgan Securities, Inc.'s Motion for Default Judgment in the case captioned *Wedbush Morgan Securities, Inc. v. Deutsche Bank AG, et. al*, Case No. 03-5198 [Docket No. 311] **be GRANTED IN PART and DENIED IN PART as follows:**

a. The Court recommends that Wedbush's motion for default judgment **as to liability** be **granted** against defendant Genesis on Counts I, V, VII, VIII, IX, X, XV, XVI and XVII of Wedbush's Amended Complaint.

b. The Court recommends that Wedbush's motion for default judgment **as to damages** be **denied** without prejudice.  Defendants' request for an **evidentiary hearing** is **denied**.  Wedbush is directed to provide the Court with a more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.  To the extent that Wedbush is constrained from disclosing such details by virtue of a confidentiality

4

agreement, Wedbush is directed to move the Court for relief from any such obligation and provide notice of such motion to the appropriate parties.

9.      Plaintiff CIBC World Markets, Inc.'s Motion for Default Judgment as to damages in

the case captioned *CIBC World Markets, Inc. v. Deutsche Bank Securities, et. al*,

Case No. 04-cv-1469 [Docket No. 407, 413] **be DENIED as follows:**

a.    The Court recommends that CIBC's motion for default judgment **as to damages** be **denied** without prejudice.  Defendants' request for an **evidentiary hearing** is **denied**.  CIBC is directed to provide the Court with a more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.  To the extent that CIBC is constrained from disclosing such details by virtue of a confidentiality agreement, CIBC is directed to move the Court for relief from any such obligation and provide notice of such motion to the appropriate parties.

Dated:  <u>January 26, 2007</u>

<u>s/  Arthur J. Boylan</u>
Arthur J. Boylan
United States Magistrate Judge

**MEMORANDUM**

I.     **BACKGROUND**

Plaintiffs are four broker-dealers claiming damages from an alleged stock-loan scheme that was allegedly orchestrated by the defendants.  Plaintiffs claim that the scheme artificially inflated the price of three companies:  Genesis, Imperial Credit Industries, Inc., and Holiday RV Superstores.

El-Batrawi was the founder, Chief Executive Officer, and principal shareholder of Genesis, a developer of Internet technologies and one of the three companies whose stock price was allegedly manipulated by the stock-loan scheme.

II.    **DISCUSSION**

**El-Batrawi's Motion to Set Aside Default**

El-Batrawi's seeks to set aside default in the above-captioned cases.  Prior 2002, El-Batrawi asserts he rented a home in Los Angeles located at 3040 Beckman Road (the "Beckman Road Property").  El-Batrawi claims that he had moved from the Beckman Road Property by February 2002 and thereafter, did not live at or visit this property.

*James P. Stephenson's Service on El-Batrawi*

Plaintiff James P. Stephenson, in his capacity as trustee for the estate of MJK Clearing, Inc. ("the Trustee") asserts that he served the original complaint by first-class mail at the Beckman Road Property on November 5, 2002.  The Trustee also served the Amended Complaint on El-Batrawi by first-class mail at the Beckman Road Property on November 22, 2002.  The Trustee filed proof of service of the Complaint and Amended Complaint with the Bankruptcy Court.

On January 17, 2003, the Trustee asserts that he served copies of the Summons and Amended Complaint on El-Batrawi by first-class mail at three additional addresses in Florida and North Carolina.  The Trustee asserts that each attempt was returned to the Trustee, indicating

that El-Batrawi no longer resided or worked at those addresses.  Furthermore, El-Batrawi did not provide any forwarding contact information.

El-Batrawi argues that he never received the summons and complaint that the Trustee mailed because he had moved from the Beckman Road Property months earlier.  However, the Trustee asserts that the copies of the summons and amended complaint that were served by first-class mail on El-Batrawi at the Beckman Road Property were not returned to the Trustee, indicating that El-Batrawi still resided there.

On May 27, 2003, this Court granted the Trustee's motion to serve El-Batrawi by publication in the Los Angeles Times once a week for four successive weeks.  A copy of the summons was published in the Los Angeles Times on May 30, 2003; June 6, 2003; June 13, 2003; and June 30, 2003.

David C. Scheper, an attorney with the law firm of Winston & Strawn in Los Angeles, represented El-Batrawi in a class action lawsuit filed in the Central District of California relating to the Genesis collapse.  Counsel for the Trustee contacted Mr. Scheper and requested that he accept service of the Amended Complaint, but he refused to do so.

Counsel for the Trustee also met with Douglas Jacobsen and Michael Tamer, officers of Genesis and asked about El-Batrawi's whereabouts.  Neither Jacobsen nor Tamer provided an address or location for El-Batrawi.

On August 22, 2003, the Trustee filed a request for entry of default against El-Batrawi, along with a supporting affidavit, and the Clerk of the Court entered default against El-Batrawi.

### *E\*TRADE Securities LLC and Ferris Baker Watts, Inc.'s Service on El-Batrawi*

In 2003, Plaintiffs E\*TRADE Securities LLC ("E\*TRADE") and Ferris, Baker Watts, Inc. ("FBW") hired Donald J. Fritsch ("Fritsch"), a private investigator, to locate El-Batrawi.

Fritsch determined that El-Batrawi formerly conducted business under the name Genesis Properties, Inc. at 5805 Sepulveda Boulevard in Van Nuys, California.  However, El-Batrawi sold the property and left no forwarding contact information.  The property manager also did not know of El-Batrawi's whereabouts.  Fritsch also determined that El-Batrawi had moved from the Beckman Road Property and left no forwarding address.

E*TRADE and FBW assert that several attempts were made to serve El-Batrawi at his last known address, without success.

Fritsch also found that El-Batrawi had utilized the address, 13063 Ventura Boulevard in Studio City, California, but El-Batrawi vacated those premises without leaving a forwarding address.

Fritsch also attempted to locate El-Batrawi by searching the addresses associated with El-Batrawi's connections as an officer with numerous Florida and Delaware corporations.  Fritsch also searched many nationwide and statewide databases for information that might lead to El-Batrawi's whereabouts.  However, these efforts failed to locate El-Batrawi.

On March 31 2003, this Court granted E*TRADE and FBW's motion to serve El-Batrawi by publication in the Los Angeles Times once a week for four successive weeks.  On August 18, 2003, the Clerk of the Court entered default against El-Batrawi.

### CIBC World Markets, Inc.'s  Service on El-Batrawi

On November 24, 2003, CIBC's process server attempted to personally serve El-Batrawi with a copy of the Summons and Complaint at the Beckman Road Property.  The process server was unable to serve El-Batrawi because there was no response at that address.

On November 25, 2003, the process server again attempted to serve El-Batrawi at the same address, but was not successful.  An unidentified male told the process server that El-Batrawi had moved the prior year and no longer lived at that address.

CIBC retained a private investigator to locate any additional addresses where it might serve El-Batrawi. The private investigator identified three new possible addresses for El-Batrawi: 1412 South Howard Avenue, Suite 214, Tampa, Florida 33606; 301 South Tryon Street, Charlotte, North Carolina 28282; and 6067 Noble Avenue, Van Nuys, California 91404.  CIBC attempted to serve El-Batrawi at the three new addresses and the Beckman Road Property.

 On October 4, 2004, CIBC served its Summons and Second Amended Complaint upon El-Batrawi at Beckman Road Property.  The sworn affidavit of the authorized process server attests that (a) on October 4, 2004, she served a person who she recognized as El-Batrawi from a previous, unrelated encounter; (b) El-Batrawi admitted his identity when she approached him; (c) El-Batrawi became hostile and swore at her when he realized that she was seeking to make service upon him; (d) she personally served El-Batrawi at that time; and (e) she subsequently identified the person she served as El-Batrawi based on a photograph of El-Batrawi.

On November 12, 2004, the Clerk of the Court entered default against El-Batrawi.  On January 20, 2005, the Court granted CIBC's motion for default judgment against El-Batrawi as to liability.

**Legal Standard**

The Court may set aside an entry of default "[f]or good cause shown."  Fed. R. Civ. P. 55(c).  In assessing whether there is good cause to set aside an entry of default, the Court considers (1) "whether the conduct of the defaulting party was blameworthy or culpable"; (2) "whether the defaulting party has a meritorious defense"; and (3) "whether the other party would

be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998).

*(1) Blameworthiness*

The Court finds that Plaintiffs properly served El-Batrawi.  First, the Trustee mailed copies of the initial Summons and Complaint and the Amended Complaint to El-Batrawi at the Beckman Road Property pursuant to the Federal Rules of Bankruptcy Procedure.  The law presumes that El-Batrawi was effectively served because those documents were never returned to the Trustee by the United States Postal Service.  *See In re Ms. Interpret*, 222 B.R. 409, 414 (S.D.N.Y. Bankr. 1998) (finding that service of summons and complaint was effective when defendant failed to rebut presumption of properly mailed service of process); *In re Thole*, 31 B.R. 548, 550 (D. Minn. Bankr. 1983) (finding that the presumption that mail was received was not overcome when the notice at issue was not returned to the sender by the postal service). Also, "a party must do more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption." *In re Ms. Interpret*, 222 B.R. at 414.

Next, E*TRADE and FBW made several attempts to serve El-Batrawi at his last known address.  However, El-Batrawi left no forwarding information.

The record shows that reasonable efforts were made to locate El-Batrawi. The Trustee spoke with El-Batrawi's business associates and his lawyer regarding his whereabouts. E*TRADE and FBW hired a private investigator to locate El-Batrawi.  The Trustee, E*TRADE, and FBW also served El-Batrawi by publication in the Los Angles Times once a week for four successive weeks as permitted by this Court.

El-Batrawi argues that Constitutional principles of due process of law and California law require that service by publication be used only as a last resort.  The record shows that the Plaintiffs made a thorough investigation and inquiry to learn El-Batrawi's whereabouts before resorting to service by publication.

El-Batrawi argues that he did not have actual notice of the lawsuit.  However, the Court does not find it credible that El-Batrawi's attorney, Mr. Scheper, never informed his client of the lawsuits pending in Minnesota even though counsel for Trustee asked Mr. Scheper if he would accept service of process on behalf of his client.  Furthermore, the California class action lawsuit was transferred to this Court in June 2003, and consolidated for pre-trial purposes with the other Minnesota actions.  Therefore, El-Batrawi's assertion that he was not aware of the action pending against him in Minnesota lacks credibility.  Thus, the Court finds that El-Batrawi also had constructive notice of the claims against him through the knowledge of his attorney.

Based on the record, it appears that El-Batrawi was evading service of process.  Accordingly, El-Batrawi is not blameless.

### (2) El-Batrawi Has Not Shown A Meritorious Defense

El-Batrawi argues that he did not engage in any wrongdoing, but was merely a bystander to the alleged stock-loan fraud that occurred.

A defaulting party must show specific evidence supported by relevant facts and law to support the existence of a meritorious defense.  *See Fink v. Swisshelm*, 182 F.R.D. 630, 633 (D. Kan. 1998) ("A bald allegation . . . without the support of facts underlying the defense will not sustain the burden of the defaulting party to show cause why the entry of default should be set aside . . . ." )

However, El-Batrawi did not provide any factual support for those statements. Accordingly, El-Batrawi has failed to establish the existence of a meritorious defense.

*(3) Prejudice to Plaintiffs If Default Were Excused*

The Court finds that it would be unfair to Plaintiffs to excuse El-Batrawi's default in this prolonged litigation. The Trustee, E*TRADE, FBW, and CIBC have litigated this case with the Non-Defaulting Defendants for many years. Thus, the Court finds that allowing El-Batrawi to re-litigate this matter would cause substantial prejudice to Plaintiffs.

The Plaintiffs conducted extensive discovery, engaged in intensive motion practice, prepared and filed detailed motion papers, and prepared for trial during the time period when notice of default was entered against El-Batrawi and the time he finally appeared in June 2006. El-Batrawi argues that he had no reasonable opportunity to defend himself. The record contradicts his assertion.

Accordingly, the Court finds that El-Batrawi had every opportunity to defend himself in this action, but declined to do so in a timely manner. El-Batrawi failed to meet the burden necessary to set aside the entry of default. Therefore, the Court denies El-Batrawi's motion to set aside default.

## El-Batrawi's Motion to Vacate the Default and Default Judgment in the CIBC Matter

El-Batrawi argues that this Court should vacate the default and default judgment entered in favor of CIBC because he was never served with any summons and complaint. El-Batrawi asserts that he moved away from the Beckman Road Property by February 2002. El-Batrawi also argues that he was not personally served on October 4, 2004, but fails to offer any other evidence as to his whereabouts.

The sworn affidavit of CIBC's authorized process server attests that on October 4, 2004, she served a person who she recognized as El-Batrawi from a previous, unrelated encounter and she subsequently identified the person she served as El-Batrawi based on a photograph of El-Batrawi.  The record also shows that El-Batrawi was aware that this Court entered default judgment as to liability against him in 2005, yet he waited more than a year to file his motion to vacate.  El-Batrawi offers no explanation for this delay.  The Court finds that the sworn affidavit of CIBC's process server is more credible under the circumstances.

On November 12, 2004, the Clerk of the Court entered an entry of default against El-Batrawi.  El-Batrawi fails to show good-cause under Rule 55(c) of the Federal Rules of Civil Procedure to set aside the Clerk's entry of default.

On January 20, 2005, Judge Richard H. Kyle granted CIBC's motion for default judgment against El-Batrawi as to liability.  Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default *and, if a judgment of default has been entered*, may likewise set it aside in accordance with Rule 60(b)."  Fed. R. Civ. P. 55(c) (emphasis added).  Rule 60(b) contains six subsections that set forth various grounds under which a court may relieve a party from a default judgment.  Fed. R. Civ. P. 60(b).

The record shows CIBC properly served El-Batrawi.  El-Batrawi failed to meet his burden under Rule 60(b) of the Federal Rules of Civil Procedure to vacate the Court's entry of default judgment on the issue of liability.  Fed. R. Civ. P. 60(b).  Therefore, the Court denies El-Batrawi's motion to set aside default judgment as to liability in the CIBC matter.

## Motions for Default Judgment

The plaintiffs in the above-captioned cases seek a default judgment from various defendants.  Defendants RBF International, Kenneth D'Angelo, Ultimate Holdings, and Adnan

Khashoggi do not contest Plaintiffs' motions for default judgment.   However, Defendants Genesis and El-Batrawi oppose Plaintiffs' motions for default judgment, arguing that an evidentiary hearing is necessary to properly determine damages.   They also argue that issues with respect to causation bar the entry of judgment.

### Legal Standard

The proper methods of service of a Complaint are set forth in Federal Rule of Civil Procedure 4.   Personal service upon an individual defendant constitutes valid service.   Fed. R. Civ. P. 4(e)(2).

Similarly, a domestic corporation may be served via personal service on a corporate officer, a managing agent, or any agent authorized by law to accept service, such as the Office of the Secretary of State in a state where the corporation is registered to do business.  Fed. R. Civ. P. 4(h)(l).

Also, a foreign corporation may be validly served via mail pursuant to Rule 4(h)(2) of the Federal Rules of Civil Procedure and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Convention on Service of Process), Nov. 15, 1965, art. 10(a), 20 U.S.T. 361 (the "Hague Convention").

In addition, an individual may be served pursuant to the law of the state in which the service is effected.  Fed. R. Civ. P.  4(e)(l).

Rule 12(a)(1) of the Federal Rules of Civil Procedure requires a defendant to file an answer within twenty days after being served with the summons, complaint or amended complaint.  Fed. R. Civ. P. 12(a)(1).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is

made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that when a defendant defaults, the Court may enter judgment by default.  "The entry of judgment by default is 'only appropriate where there has been a clear record of delay or contumacious conduct.'"  *Taylor v. City of Ballwin*, 859 F.2d 1330, 1332 (8th Cir. 1988); *See also Iowa State Univ. Research Found, v. Greater Continents Inc.*, 208 F.R.D. 602, 603-04 (S.D. Iowa 2002) (denying defendant's motion to set aside default judgment because defendant's conduct in failing to appear and failing to answer the Complaint were enough to enter a default judgment against it).

Furthermore, the Court may use its discretion in determining whether an evidentiary hearing regarding damages on default is appropriate.  Fed. R. Civ. P. 55(b)(2).  However, even where a default has been entered, a plaintiff seeking a default judgment must "prove its actual damages to a reasonable degree of certainty."  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818-19 (8th Cir. 2001).

## I.     SERVICE OF COMPLAINT BY TRUSTEE

### A.     Service on Kenneth D'Angelo and RBF International, Inc.

The Trustee served the original Complaint on Kenneth D'Angelo by first-class mail on November 5, 2002, and on RBF by first-class mail on November 7, 2002.  D'Angelo and RBF were served with the Amended Complaint by first-class mail on November 22, 2002.  The Trustee filed proof of service with the Bankruptcy Court.  D'Angelo and RBF were also served with each subsequent Amended Complaint via first-class mail.

D'Angelo and RBF acknowledged effective service of the Summons, Complaint and Amended Complaint in this matter in a Stipulation dated December 24, 2002, between counsel for the Trustee and counsel for D'Angelo and RBF.  Pursuant to the Stipulation, D'Angelo and

RBF agreed to answer, move, or otherwise plead in response to the Amended Complaint on or before January 13, 2003.  The parties filed the Stipulation with the Court on December 30, 2002, and the Court entered a corresponding Order on January 10, 2003.

On January 13, 2003, D'Angelo and RBF moved for a protective order, excusing them from answering the Amended Complaint, but this Court denied their motion on February 21, 2003, and required D'Angelo and RBF to answer the Amended Complaint within twenty days.

On March 24, 2003, D'Angelo and RBF moved to dismiss the Amended Complaint.  On May 5, 2003, this Court granted the motion to strike D'Angelo's and RBF's Motion to Dismiss and ordered D'Angelo and RBF to respond to the Amended Complaint within twenty days.  The Trustee received no response and subsequently filed a request for entry of default against D'Angelo and RBF, along with a supporting affidavit.  The Clerk of Court entered default against D'Angelo and RBF on the same day.

**B.      Service on Ultimate Holdings, Ltd.**

Ultimate Holdings is a company organized under the laws of Bermuda.  On November 25, 2002, the Registrar of the Supreme Court of Bermuda ("Registrar") transmitted the Summons, Amended Complaint and Request for Service Abroad of Judicial Documents to the Head Bailiff of the Magistrates Court.[1]  The Registrar requested that the documents be served on Ultimate.   In a letter dated December 11, 2002, the Trustee received notice that service of the Summons and Amended Complaint had been completed on Ultimate.  The Affidavit of Service was filed with the Court on February 10, 2003.  Ultimate has never made an appearance in this case.  On August 22, 2003, the Clerk of the Court entered default against Ultimate.

---

[1]This was done pursuant to the procedure of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague on November 15, 1965 ("Hague Convention"), of which Bermuda is a signatory, and the Federal Rules of Civil Procedure.

C.      **Service on Adnan Khashoggi**

Adnan Khashoggi was served on April 4, 2003, in Cannes, France, by a French Bailiff in accordance with the Hague Convention – of which France is a signatory – and the Federal Rules of Civil Procedure.  The French Bailiff also served Khashoggi by registered mail on April 7, 2003, in Cannes, France, in accordance with the Hague Convention and the Federal Rules of Civil Procedure.  The Affidavit of Service with respect to Khashoggi was filed with the Court on July 8, 2003.  On August 22, 2003, the Clerk of the Court entered default against Khashoggi.

D.      **Service on GenesisIntermedia, Inc.**

The Trustee served Genesis with the original Complaint by first-class mail pursuant to the Federal Rules of Bankruptcy Procedure on November 5, 2002.  The Trustee served Genesis with the Amended Complaint on November 22, 2002, via first-class mail.  The Trustee served Genesis with each subsequent Amended Complaint via first-class mail.

On February 7, 2003, this Court issued an order requiring Genesis to answer, move, or otherwise plead in this matter by February 28, 2003.  On May 8, 2003, this Court issued another order requiring that Genesis answer, move, or otherwise plead within thirty days of the receipt of the order deciding the motions to dismiss filed by various plaintiffs.  Genesis never answered the Trustee's Complaint.

E.      **Service on Ramy El-Batrawi**

As discussed above, the Court finds that the Trustee properly served El-Batrawi with a summons and complaint.

THE TRUSTEE'S MOTION FOR DEFAULT JUDGMENT

The Court finds that none of the defaulting Defendants filed an answer within the time prescribed by Rule 12 of the Federal Rules of Civil Procedure.  The Clerk of the Court entered default against D'Angelo, RBF, Ultimate Holdings, Khashoggi, and El-Batrawi.  The Court finds

that entry of default is appropriate against Genesis pursuant to Rule 55 of the Federal Rules of Civil Procedure.

The Trustee seeks default judgment against RBF International, Inc., Kenneth D'Angelo, GenesisIntermedia, Inc., Ramy El-Batrawi, Ultimate Holdings, Ltd., and Adnan Khashoggi in an attempt to recover the $67.5 million in unrecompensed damages.

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that when a defendant defaults, the Court may enter judgment by default. Each of the defaulting Defendants is in default for failure to answer the Complaint or Amended Complaint, so the Trustee argues that judgment by default is appropriate as follows:

> On Counts I, II, IV, VII, VIII, IX, X, XI, XII, XIII, and XIV of the Third Amended Corrected Complaint, Defendants RBF International, Inc. and Kenneth D'Angelo should be held jointly and severally liable for a money judgment in the amount of $67.5 million, plus post-judgment interest.

> On Counts I, IV, V, VII, and VIII of the Third Amended Corrected Complaint, Defendants GenesisIntermedia, Inc., Ramy El-Batrawi, Ultimate Holdings, Inc., and Adnan Khashoggi should be held jointly and severally liable for a money judgment in the amount of $67.5 million, plus post-judgment interest.

Defendants RBF International, Kenneth D'Angelo, Ultimate Holdings, and Adnan Khashoggi do not contest the Trustee's Motion for Default Judgment. However, Defendants Genesis and El-Batrawi oppose the Trustee's Motion, arguing that an evidentiary hearing is needed to calculate damages and issues regarding causation bar the entry of judgment. The Court disagrees.

## *The Trustee's Damages*

There are three categories of damages at issue in this lawsuit for which the Trustee claims the defaulting Defendants are jointly and severally liable:  (1) losses associated with the stock-loan chains at issue in this case (*i.e.*, the cash collateral not returned to MJK through the GENI,

ICII, and RVEE loan chains); (2) the costs of liquidating the Estate of MJK Clearing, Inc.; and

(3) the lost value of the MJK and Miller Johnson Steichen Kinnard, Inc. ("MJSK") businesses.

In total, these losses amounted to $335 million, which is broken down as follows:

| | |
|---|---|
| $200,000,000 | Stock-Loan Chain Losses (cash collateral not returned) |
| $50,000,000 | Liquidation Costs for the Estate |
| + $85,000,000 | Lost Value of Businesses |
| $335,000,000 | Total Damages |

Each category of the Trustee's damages is supported by extensive documentary evidence

and the thorough expert reports of Dr. Robert Comment, Mary D. Jepperson, and James

Hitchner.  [Docket No. 642].  Specifically, the losses incurred by MJK in the GENI, ICII, and

RVEE stock-loan transactions are detailed in the expert reports of Mary D. Jepperson and Dr.

Robert Comment.  The losses associated with the value of MJK and MJSK are set forth in the

expert report of James Hitchner.  And the liquidation costs for the MJK Estate are substantiated

in the proceedings and documents filed with the Bankruptcy Court in connection with the

liquidation of the MJK Estate.

The Trustee recovered a large portion of these damages from Defendants Deutsche Bank

AG, Deutsche Bank Securities, Inc., Deutsche Bank Securities Limited, and Wayne Breedon

(collectively referred to as the "Deutsche Bank Defendants") through settlement in January 2006.

The Trustee recovered $147.5 million in cash and the Deutsche Bank Defendants also obtained

waivers and withdrawals of certain claims in the MJK Liquidation Proceeding worth

approximately $120 million.

Specifically, the Deutsche Bank Defendants secured waivers from certain of MJK's

counterparties in the relevant stock-loan chains who had filed claims in the MJK liquidation

proceedings (*Securities Investor Protection Corporation v. MJK Clearing, Inc.*, ADV. No. 01-4257 (Bankr. D. Minn. 2001)).  Each of those counterparties, namely, E*TRADE Securities LLC ("E*TRADE"), Ferris, Baker Watts, Inc. ("FBW"), and Nomura Securities International ("Nomura"), also filed separate suits against the Defendants in this case.[2]

The claims filed against MJK by those counterparties establish that the value of their waivers to the MJK Estate was approximately $120 million.  Accordingly, the total value of the Deutsche Bank settlement was as follows:

| | |
|---|---|
| $147,500,000 | Cash paid by Deutsche Bank Defendants |
| + $120,000,000 | Value of Claims Waived Against the Estate |
| $267,500,000 | Total Value of Deutsche Bank Settlement |

Taking into consideration the Deutsche Bank settlement, the Court finds that the Trustee has unrecompensed damages in the amount of $67.5 million:

| | |
|---|---|
| $335,000,000 | Total Damages |
| - $267,500,000 | Total Value of Deutsche Bank Settlement |
| $67,500,000 | Total Unrecompensed Damages |

## A.      No Evidentiary Hearing Is Necessary.

Although the Court could hold an evidentiary hearing to determine the amount of damages, as requested by El-Batrawi and Genesis, the Court deems that an evidentiary hearing is unnecessary in this case.  See Fed. R. Civ. P.  55(b)(2); *see also United States v. Grant*, 268 F.Supp. 2d 29 (D.D.C. 2003) (holding that the court is not required to conduct a hearing as to the amount of damages as long as the party moving for default judgment provides a basis for the

---

[2] The Deutsche Bank Defendants presumably compensated E*Trade, FBW, and Nomura in exchange for the waiver and withdrawal of claims against the MJK Estate.  However, the amounts of those settlements have not been disclosed publicly or to the Trustee.  [Docket No. 641].

damages sought)

The Trustee has provided ample documentary evidence and sound bases for his damages through the comprehensive and detailed expert reports of Dr. Robert Comment, Mary Jepperson, and James Hitchner, and through publicly available Bankruptcy Court filings.

The Court is not persuaded by El-Batrawi's and Genesis' arguments that an evidentiary hearing mimicking a trial on the merits is necessary to sort through issues relating to duplicative damages and apportionment.

As to duplicative damages, El-Batrawi and Genesis argue that there must be a hearing to ensure that they are not paying twice for the same losses (*i.e.*, paying the MJK Estate for stock-loan losses that include MJK's inability to pay counterparty FBW and also paying FBW for the amount it never recovered from MJK).

This argument ignores the settlement with the Deutsche Bank Defendants, which resolved any claims with the Trustee's counterparties.  In other words, the $267.5 million in value recovered by the Trustee in the settlement included the $200 million in stock-loan losses.

The Trustee is now in the process of attempting to recover the remaining $67.5 million, which corresponds with the costs of liquidating the estate and the lost value of MJK's business. Under these circumstances, there can be no double counting relating to the Trustee's claims.

El-Batrawi's and Genesis' argument with respect to apportionment is similarly unavailing.  While it appears unlikely that apportionment could be an issue with respect to claims brought under Section 10(b)(5) in the context of a default judgment, it is clearly not applicable to the many other federal and state claims brought against these Defendants, under which they may be held jointly and severally liable.  S*ee In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1169 (E.D.N.Y. 1996) ("generally, it does not make sense to apply [apportionment principles ] in

cases where the non-settling defendant willfully defaulted by disregarding discovery obligations and impeded determination of liability").

Accordingly, the Court holds that no evidentiary hearing is necessary to resolve the issue of damages.

**B.      Default Judgment Is Appropriate Because There Are No Issues Regarding Causation.**

Once a defendant is deemed to be in default, the factual allegations of the Complaint will be taken as true.  *F.T.C. v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1297 (D. Minn. 1985).

Allegations of the Complaint, in effect, become findings of fact:

> If the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover.  The allegations of the complaint except as to the amount of damages are taken as true.  If the default is established, the defendant has no further standing to contest the merits of plaintiff's right to recover. His only recourse is to show good cause for setting aside the default and, failing that, to contest the amount of the recovery.

*Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) (quoting 3 Barron & Holtzoff, Federal Practice & Procedure § 1216, pp. 85-86 (1958)); *see also Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.*, 186 F. Supp. 2d 1009, 1017 (D. Minn. 2002), rev'd in part on other grounds by 46 Fed. Appx. 964 (Fed. Cir. Sept. 23, 2002) (noting that on a motion for entry of default judgment, allegations of fact in the complaint are taken as true unless they are contradictory on the document's face).

Nevertheless, El-Batrawi and Genesis argue that the Court should not enter default judgment against them because the facts in the Trustee's Complaint, even if well pleaded, do not establish their liability or any causal relationship between their conduct and the damages.  The Court disagrees.

As an initial matter, El-Batrawi or Genesis fail to make any specific points in support of this argument.  They have not pointed to any particular claims against them that are unsupported or contradicted by the evidence, as they must to prevail on this argument.  In addition, El-Batrawi or Genesis fail to point to any evidence undermining the causal relationship between their conduct and the damage suffered by MJK, as alleged by the Trustee.

In contrast, the Trustee has submitted thorough and uncontroverted expert reports showing the direct connection between each Defendant's conduct and the harm caused to MJK.  These reports are grounded in thousands of documents amassed by the Trustee during his investigation and the discovery process.  [Docket No. 642].  In addition, the Trustee has hundreds of recordings of telephone calls involving Defendants, including El-Batrawi, which draw a direct connection between El-Batrawi and Genesis and the fraudulent scheme alleged by the Trustee.

The Court finds that the allegations in the Trustee's Complaint and the expert reports of Dr. Robert Comment and Mary Jepperson build a solid foundation of liability against both El-Batrawi and Genesis.

## Conclusion and Recommendation

Accordingly, this Court **recommends** that that the Trustee's Motion for Default Judgment be **granted.**  [Case No. 02-cv-4845, Docket No. 597, 604, 622].

## II.    SERVICE OF COMPLAINT BY FBW

### A.    Service on Ultimate Holdings, Ltd.

Ultimate Holdings is a limited liability company organized under Bermuda law with its principal place of business at 18 Parliament Street, Hamilton, Bermuda.  Ultimate Holdings is controlled by defendant Khashoggi.  Ultimate Holdings is an investment company with no known operations.

FBW's applications for service upon Ultimate Holdings were duly accepted by the Supreme Court for Bermuda, in conformity with applicable Articles of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. FBW's First Amended Complaint was made upon Ultimate Holding's registered agent and counsel. The affidavit of service was filed with this Court on May 20, 2003.   To date, Ultimate has not served FBW or its counsel with a valid answer, motion, or otherwise pled a response.

On August 1, 2003, the Clerk of the Court entered default against Ultimate Holdings.

**B.      Service on Adnan Khashoggi**

Adnan Khashoggi is the president and sole owner of Ultimate Holdings.  On April 4, 2003, FBW served Khashoggi by registered mail and by personal service in France.  On July 7, 2003, the Declaration of French counsel, Youna Le Berre Lemaire, was filed with this court explaining that French Bailiff complied with service of process under French procedural law and the applicable Articles of The Hague Convention.  The Official Report (Affidavit) of the French Bailiff (process server), Me. Jérôme Laleure, was filed with the Court on July 9, 2003.

To date, Khashoggi has not served FBW or its counsel with a valid answer, motion or otherwise pled a response.  On August 1, 2003, the Clerk of the Court entered default against Khashoggi.

**C.      Service on RBF International**

RBF, a New Jersey corporation, was also properly served with FBW's complaint.  In response to FBW's First Amended Complaint, RBF moved the Court for leave to be excused from answering.  The Court denied RBF's request.  RBF's answer was also ruled improper.  To date, RBF has failed to properly respond to FBW's complaint.

On September 24, 2003, the Clerk of the Court entered default against RBF.

**D.      Service on Ramy El-Batrawi**

As discussed above, the Court finds that FBW properly served El-Batrawi with a summons and complaint.

## FBW'S MOTION FOR DEFAULT JUDGMENT

On June 23, 2006, FBW filed a motion for default judgment against RBF, El-Batrawi, Ultimate Holdings, and Khashoggi seeking joint and several liability against each defendant for the full amount of its damages.  El-Batrawi opposes FBW's motion for default judgment.

The Court finds that default judgment as to liability is appropriate here because the defendants failed to respond to a validly served complaint.  When a defendant's default has been entered, the allegations of the complaint necessary to support a judgment are deemed established. *See, e.g.*, *Taylor v. City of Baldwin*, 859 F.2d 1330, 1333 n. 7 (8th Cir. 1988) ("[O]nce a default is entered, a defendant on default has no further standing to contest the factual allegations of plaintiff's claim for relief.  In fact, defendant is deemed to have admitted all well pleaded allegations in the complaint.") (internal citations omitted).

However, the Court has insufficient evidence to grant FBW's motion for default judgment as to damages.

### *FBW's Damages*

FBW seeks joint and several judgments against all defendants.  FBW asserts total damages of $29,432,000 as follows:  FBW has suffered a total of $19,800,000 actual and consequential damages.  [Docket No. 969-71].  FBW also requests prejudgment interest on its damages at the statutory rate of 4% per annum, which FBW has calculated at $3,532,000.  FBW has incurred attorneys' fees and costs pursuing recovery in this action.  These expenses totaled approximately $6,100,000 as of July 1, 2006.

In connection with this and related litigation, FBW has received payments in settlement of claims against officers and directors of MJK for a sum of $226,800.  It has also received a settlement payment from Deutsche Bank Defendants, Nomura Canada, Inc., Nomura Securities, International, Inc., and Scott Reed, the amount of which is confidential.

However, the amounts of those settlements were not disclosed to the Court (or to El-Batrawi).  Furthermore, FBW has not submitted to the Court (or to El-Batrawi) documentary or testimonial evidence sufficient for the Court to determine what portion of the funds and discharge of indebtedness that FBW recovered in those settlements that may reduce El-Batrawi's liability.  Nonetheless, the Court finds that an evidentiary hearing is not required here.  Fed. R. Civ. P. 55(b)(2).  *See also Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc*. 193 F.R.D. 87 (E.D.N.Y. 2000) (noting that whether to hold a hearing is within the court's discretion and "[t]he court may simply rely on detailed affidavits or documentary evidence in evaluating the proposed sum.").  FBW is directed to provide the Court with a more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.

**Conclusion and Recommendation**

Accordingly, this Court **recommends** that FBW's motion for default judgment **as to liability** be **granted** against defendants RBF, El-Batrawi, Ultimate, and Khashoggi on Counts I, IV, XVII, XVIII, XIX and XXI of the First Amended Complaint.  However, the Court recommends that FBW's motion for default judgment **as to damages** be **denied** without prejudice.  [Case No. 02-cv-3682, Docket No. 967].

### III.    SERVICE OF COMPLAINT BY E*TRADE

**A.    Service on Adnan Khashoggi.**

On April 4, 2003, E*TRADE served its Amended Complaint on Khashoggi in Cannes, France.  However, Khashoggi never filed with the Court, or served on E*TRADE or its counsel, a valid answer, motion, or other response to the Amended Complaint.

E*TRADE thereafter filed a Second Amended Complaint and a Third Amended Complaint, but left the claims and allegations against Khashoggi unchanged.  On August 18, 2003, the Clerk of the Court entered default against Khashoggi.

**B.    Service on Ultimate Holdings, Ltd.**

On December 12, 2003, E*TRADE served its original Complaint on Ultimate's registered agent and counsel, Cox & Wilkinson, in Bermuda.  As set forth above, on April 4, 2003, E*TRADE served Khashoggi, president and principal owner of Ultimate, with the Amended Complaint.

Ultimate has failed to answer or respond to the Complaint or the Amended Complaint. E*TRADE thereafter filed a Second Amended Complaint and a Third Amended Complaint, but left the claims and allegations against Ultimate unchanged.  On August 18, 2003, the Clerk of the Court entered default against Ultimate.

**C.    Service on RBF International, Inc.**

E*TRADE served its Amended Complaint on RBF, but RBF moved for a protective order excusing it from answering.  On February 21, 2003, the Court denied RBF's motion and ordered RBF to answer the Amended Complaint.

On March 24, 2003, RBF, purporting to act *pro se*, filed a motion to dismiss the

Amended Complaint.  On April 10, 2003, E*TRADE moved to strike that motion on the ground that a corporation cannot appear *pro se*.

On May 5, 2003, the Court granted E*TRADE's motion and ordered RBF to file a proper answer to the Amended Complaint .  On July 23, 2003, RBF, again purporting to act *pro se*, purported to file an answer to the Amended Complaint.

On August 19, 2003, E*TRADE moved for entry of default against RBF, arguing that RBF's purported answer was improper because a corporation cannot appear *pro se*.  On September 24, 2003, the Court granted E*TRADE's motion and ordered that default be entered against RBF.  The Clerk of the Court entered default against RBF the same day.

E*TRADE thereafter filed a Second Amended Complaint and a Third Amended Complaint, but left the claims and allegations against RBF unchanged.

**D.      Service on Genesis**

On December 2, 2002, E*TRADE served its original Complaint on Michel S. Tamer, Esq., who was the chief executive officer of Genesis (Mr. Tamer was also an active member of the State Bar of California at that time).

On January 20, 2003, E*TRADE served its Amended Complaint on Donald Ramenian, Esq., who had recently finished representing Genesis as a defendant in a contract action brought in the Superior Court of the State of California.

On February 6, 2003, E*TRADE and Genesis through Mr. Tamer, executed a stipulation (approved by the Court) whereby Genesis acknowledged effective service of the Amended Complaint and agreed to respond by February 28, 2003.

Genesis did not respond to the Amended Complaint by the stipulated deadline and on August 1, 2003, the Clerk of the Court entered default against Genesis.  E*TRADE thereafter

filed a Second Amended Complaint and a Third Amended Complaint, but left the claims and allegations against Genesis unchanged.

E*TRADE thereafter voluntarily dismissed all but Count I (under § 10(b) of the Exchange Act) and Count VII (under § 13(d) of the Exchange Act) against Genesis, and moved for default judgment against Genesis on the issue of liability only.  Genesis opposed the motion and moved to have its default set aside.  On June 10, 2005, the Court granted E*TRADE's motion for default judgment as to Count I of the Third Amended Complaint and denied Genesis' motion to set aside the default. The Court entered default judgment against Genesis as to liability.

**E.      Service on Ramy El-Batrawi**

As discussed above, the Court finds that E*TRADE properly served El-Batrawi with a summons and complaint.

**E\*TRADE'S MOTION FOR DEFAULT JUDGMENT**

E*TRADE  seeks default judgment against Genesis as to damages.  E*TRADE also seeks default judgment against Khashoggi, Ultimate, RBF, and El-Batrawi as to both liability and damages.

The Court finds that default judgment as to liability is appropriate here because the defendants failed to respond to a validly served complaint.   Therefore, the allegations of E*TRADE's complaint necessary to support a judgment are deemed established.  *Taylor*, 859 F.2d at 1333, n. 7.

E*TRADE asserts that it has deducted the amounts recovered in its settlements with the non-defaulting Defendants from the damages it now seeks.  As such, E*TRADE asserts that its remaining damages are $13,971,140.

However, the Court has insufficient evidence to grant E*TRADE's motion for default judgment as to damages.

*Default Judgment Against Genesis*

E*TRADE has already obtained a default against Genesis on the issue of liability. E*TRADE requests that the Court enter default judgment against Genesis on the issue of damages.  E*TRADE has recovered the majority of its damages through settlements with the Deutsche Bank Defendants, Nomura Securities International, Inc., Nomura Canada, Inc., and Scott Reed, amounts of which are subject to confidentiality agreements.

However, the amounts of those settlements were not disclosed to the Court (or to Genesis).  Furthermore, E*TRADE has not submitted to the Court (or to Genesis) documentary or testimonial evidence sufficient for the Court to determine what portion of the funds and discharge of indebtedness that E*TRADE recovered in those settlements that may reduce Genesis' liability.  However, as discussed above, the Court finds that an evidentiary hearing is not required here.  Fed. R. Civ. P. 55(b)(2).   E*TRADE is directed to provide the Court with a more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.

*Default Judgment Against* Khashoggi, Ultimate, RBF, and El-Batrawi

The Court has insufficient evidence to grant E*TRADE's motion for default judgment as to damages against Khashoggi, Ultimate, RBF, and El-Batrawi for the reasons stated above.

**Conclusion and Recommendation**

Accordingly, this Court **recommends** that E*TRADE's motion for default judgment **as to liability** be **granted** against Khashoggi, Ultimate, RBF, and El-Batrawi.  However, the Court recommends that E*TRADE's motion for default judgment **as to damages** against Genesis,

Khashoggi, Ultimate, RBF, and El-Batrawi be **denied** without prejudice. [Case No. 02-cv-3711, Docket No. 869, 875].

## IV.     SERVICE OF COMPLAINT BY WEDBUSH MORGAN SECURITIES, INC.

### A.     Service on Genesis

Wedbush filed its complaint in the above matter on September 10, 2003.  On September 12, 2003, Wedbush personally served it summons and complaint on Genesis.  Wedbush filed the return of service with the Court on September 19, 2003.

Genesis failed to serve an answer or otherwise respond to the complaint within 20 days of service as required by Rule 12(a) of the Federal Rules of Civil Procedure.  After more than three years of litigation, Genesis has never served an answer or otherwise responded to the complaint by Wedbush nor has Genesis ever requested permission from the Court for an extension to serve or file an answer.

On October 17, 2003, the Clerk of the Court entered default against Genesis.  In May 2005, Wedbush filed an Amended Complaint that was identical in all material respects as to the claims asserted against Genesis.

On July 13, 2006, Wedbush moved for entry of default judgment as to liability and damages on all claims asserted against Genesis.

## WEDBUSH'S MOTION FOR DEFAULT JUDGMENT

Wedbush seeks default judgment against Genesis as to both liability and damages.  Due to its inability to disclose the details of its settlement with Deutsche Bank, Wedbush explained the basis of its damage calculations by referring the Court to calculations set forth in Wedbush's Confidential Mediation Statement.

A default was entered against Genesis on Wedbush's original complaint.  Wedbush's Amended Complaint is identical in all material respects as to the claims against Genesis and is determined to be well-pleaded in its allegations against Genesis.

Genesis failed to serve an answer or otherwise respond to the Amended Complaint within 20 days of service as required by Rule 12(a) of the Federal Rules of Civil Procedure.

Therefore, pursuant to Rule 55(b) of the Federal Rule of Civil Procedure, Wedbush is entitled to default judgment as to liability for violations of § 10(b) of the Securities and Exchange Act of 1934 (Count I); § 11 of the Securities and Exchange Act of 1933 (Count V); § 13(d) of the Securities and Exchange Act of 1934 (Count VII); § 9 of the Securities and Exchange Act of 1934 (Count VIII); the Minnesota Securities Act, Minn. Stat. §§  80A.01 (Count IX) and 80A.03 (Count X); for common law fraud (Count XV), conspiracy to defraud (Count XVI); and unjust enrichment (Count XVII).

Wedbush's claimed damages against Genesis include loss of principal, prejudgment interest, lost conduit revenue, lost revenue on Genesis trades and recoverable litigation costs and attorneys' fees.  After crediting amounts recovered through settlement with the Deutsche Bank defendants, Wedbush claims that its remaining out-of-pocket loss is $10,655,196.

However, the Court has insufficient evidence to grant Wedbush's motion for default judgment as to damages.  The amount of the settlement with the Deutsche Bank defendants was not disclosed to the Court (or to Genesis).  Furthermore, Wedbush has not submitted to the Court (or to Genesis) documentary or testimonial evidence sufficient for the Court to determine what portion of the funds and discharge of indebtedness that Wedbush recovered in those settlements that may reduce Genesis' liability.  Nonetheless, the Court finds that an evidentiary hearing is not required here. Fed. R. Civ. P. 55(b)(2).   Wedbush is directed to provide the Court with a

more detailed affidavit(s) and supporting documentation for their calculation of damages, including amounts received in settlement from other sources.

**Conclusion and Recommendation**

Accordingly, this Court **recommends** that Wedbush's motion for default judgment **as to liability** be **granted** against defendant Genesis on Counts I, V, VII, VIII, IX, X, XV, XVI and XVII of Wedbush's Amended Complaint. However, the Court recommends that Wedbush's motion for default judgment **as to damages** be **denied** without prejudice. [Case No. 03-cv-5198, Docket No. 311].

**V. SERVICE OF COMPLAINT BY CIBC WORLD MARKETS, INC.**

**A. Service on Kenneth D'Angelo**

On August 17, 2004, CIBC personally served its Summons and Second Amended Complaint upon D'Angelo at his residence in Edison, New Jersey. D'Angelo has served no Answer or other response to CIBC's Second Amended Complaint. On November 17, 2004, the Court entered default judgment against D'Angelo as to liability.

**B. Service on RBF**

On August 17, 2004, CIBC personally served its Summons and Second Amended Complaint upon Kenneth D'Angelo, who was RBF's President, Secretary, and managing agent, at his residence in Edison, New Jersey. RBF did not serve an Answer or other response to CIBC's Second Amended Complaint. On November 17, 2004, the Court entered default judgment against RBF as to liability.

**C. Service on Genesis**

On August 12, 2004, CIBC personally served its Summons and Second Amended Complaint upon Michael Tamer, president and registered agent for service of process, at 12030

Doral Street, Northridge, California.   Genesis does not dispute the fact that it was properly served.   Genesis has not served an Answer or other response to CIBC's Second Amended Complaint.   On November 17, 2004, the Court entered default judgment against Genesis as to liability.

**D.     Service on Ramy El-Batrawi.**

As discussed above, the Court finds that CIBC properly served El-Batrawi with a summons and complaint.   On January 20, 2005, the Court entered default judgment against El-Batrawi as to liability.

### CIBC'S MOTION FOR DEFAULT JUDGMENT

CIBC seeks default judgment against D'Angelo, RBF, Genesis, and El-Batrawi as to damages.   CIBC asserts that D'Angelo, RBF, Genesis, and El-Batrawi are jointly and severally liable in the amount of $13,251,021.10, which includes compensatory and treble damages, costs, legal fees, and interest.

CIBC asserts that its damages were set forth in detail through the affidavits of Tim Reid and Nancy Brasel, which were filed under seal because they contain confidential information about a settlement between CIBC and defendant Deutsche Bank.

However, CIBC has not submitted to El-Batrawi or Genesis the amount of the settlement between CIBC and Deutsche Bank.   The Court finds that the defendants are entitled to see what portion of the funds and discharge of indebtedness, if any, that CIBC recovered in the settlement so that they may determine the amount that should be applied to reduce their liability.   Finally, as discussed above, the Court finds that an evidentiary hearing is not required on the issue of damages.   CIBC is directed to provide the Court with a more detailed affidavit(s) and supporting

documentation for their calculation of damages, including amounts received in settlement from other sources.

## Conclusion and Recommendation

Accordingly, the Court **recommends** that CIBC's motion for default judgment **as to damages** be **denied** without prejudice.  [Case No. 04-cv-1469, Docket No. 407, 413].

AJB

**NOTICE**

Pursuant to Local Rule 72.2 (b), a party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before February 13, 2007.